```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
```

FANNIE KEITH,

        Plaintiff,
v.                                     CASE NO:   8:10-cv-1588-T-33EAJ

WELLS FARGO FINANCIAL
AMERICA, INC.,

        Defendant.
_____/

**ORDER**

      This matter is before the Court pursuant to Defendant Wells Fargo Financial America, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 10), filed on July 30, 2010.  Plaintiff Fannie Keith filed a Response in Opposition on August 13, 2010. (Doc. # 11).  For the reasons that follow, the Court grants Wells Fargo's Motion to Compel Arbitration and Stay Proceedings. The parties are compelled to arbitrate, and this case will be stayed pending arbitration.

**I.**    **Factual Background and Procedural History**

      In June of 2006, Ms. Keith entered into a credit card agreement containing an arbitration clause with Wells Fargo. (Docs. ## 10 at 1, 10-1 at 3).  Sometime after entering the agreement, Ms. Keith incurred a financial obligation to Wells Fargo. (Doc. # 11 at 1).  Ms. Keith sued Wells Fargo in the Thirteenth Judicial Circuit in and for Hillsborough County after

1

allegedly receiving numerous telephone calls from Wells Fargo,[1] which was attempting to collect a debt from Ms. Keith. (Doc. # 2). In particular, Ms. Keith alleges that Wells Fargo violated the Florida Consumer Collection Practices Act and invaded her privacy. (Doc. # 2).

On July 19, 2010, Wells Fargo removed this action on the basis of diversity jurisdiction. (Doc. # 1). Wells Fargo made a demand for arbitration on July 28, 2010. (Doc. # 10 at 3). Wells Fargo next filed its Motion to Compel Arbitration and Stay Proceedings (Doc. # 10), and Ms. Keith filed her response in opposition. (Doc. # 11).

## II. **Motion to Compel Arbitration**

The agreement contains an arbitration clause. (Docs. ## 10 at 1-2; 10-1 at 3). Part a of the arbitration clause reads:

> a. <u>Binding Arbitration</u>. You and Wells Fargo Bank, N.A. (the "BANK") agree that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to the Card or related services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access the Bank. It includes claims based

---

[1] Ms. Keith alleges that she received approximately 340 telephone calls from Wells Fargo between January 1, 2010, and March 16, 2010, averaging five per day. (Doc. # 11 at 3).

>      on broken promises or contracts, torts, or other
>      wrongful actions. It also includes statutory,
>      common law and equitable claims. A Dispute also
>      includes any disagreements about the meaning or
>      application of this Arbitration Agreement. This
>      Arbitration Agreement shall survive the payment or
>      closure of your account. YOU UNDERSTAND AND AGREE
>      THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A
>      JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC
>      COURT. As the sole exception to this Arbitration
>      Agreement, you and the Bank retain the right to
>      pursue in small claims court any Dispute that is
>      within that court's jurisdiction. If either you or
>      the Bank fails to submit to binding arbitration
>      following lawful demand, the party so failing bears
>      all costs and expenses incurred by the other in
>      compelling arbitration.

(Doc. # 10-1 at 3)(emphasis in original). The arbitration clause requires all "disputes," as broadly defined in the clause, to be decided before the American Arbitration Association. (Doc. # 10 at 1-2; Doc. # 10-1 at 3).

### III. Analysis

Wells Fargo asserts that Ms. Keith accepted the agreement, and thus the arbitration clause, by using the credit card. (Doc. # 10 at 2). On the other hand, Ms. Keith contends that this Court should not enforce the agreement for three reasons: (i) the claims are outside the scope of the agreement; (ii) the agreement is unconscionable; and (iii) that the agreement is against public policy. (Doc. # 11 at 2).

#### 1. Scope

Wells Fargo states that Ms. Keith's claims are within the broad scope of the arbitration clause, as the agreement expressly

3

covers "any unresolved disagreement between you and the Bank" including "statutory, common law and equitable claims." (Doc. # 10 at 5). It also contends that Florida Consumer Collection Practices Act claims have been held to be arbitrable. Reeves v. Ace Cash Express, Inc., 937 So. 2d 1136, 1137 (Fla. 2d DCA 2006)("[N]othing in the text of section 559.77 evinces a legislative intent to preclude the submission of FCCPA claims to arbitration.").

Ms. Keith argues that this is a Florida Consumer Collection Practices Act action which does not concern the agreement between the parties. (Doc. # 11 at 4). She notes that her complaint does not refer to the agreement. (Doc. # 11 at 4). She alleges that there is no meaningful connection between her claims and the agreement, and therefore she could not have reasonably intended her claims to be subject to arbitration. (Doc. # 11 at 4-5)(citing Seifert v. U.S. Home Corp., 750 So. 2d 633, 635 (Fla. 1999)).[2]

Federal policy favors arbitration over litigation and requires that arbitration clauses be construed broadly. Seaboard Coast Line

---

[2] In Seifert, the Florida Supreme Court held that an arbitration clause included in the Seiferts' home purchase and sale agreement did not require them to arbitrate their wrongful death claim against their homebuilder. Id. at 641-43. In contrast to the instant arbitration clause, there was nothing in the Seiferts' home purchase and sale agreement to indicate that either party intended to include tort claims for personal injuries arising under the common law within the scope of the arbitration provision. Id. at 641. Here, the arbitration clause specifically covers statutory and common law claims like the FCCPA and privacy claims at issue in Ms. Keith's complaint. (Doc. # 10-1 at 3; Doc. # 2). As such, Seifert is inapposite.

R.R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982). All doubts are to be resolved in favor of arbitration. Id.; see also Nicor Int'l Corp. v. El Paso Corp., 292 F. Supp. 2d 1357, 1371 (S.D. Fla. 2003) (noting strong federal policy in favor of enforcing arbitration agreements). Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001).

As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The question of whether a contract's arbitration clause requires arbitration of a given dispute is a matter of contract interpretation. Seaboard Coast, 690 F.2d at 1348 (11th Cir. 1982).

On its face, the arbitration clause in the parties' agreement states that all disputes, defined as "any unresolved disagreement between you and the Bank," shall be resolved by arbitration. (Doc. # 10-1 at 3). The clause specifically states that a dispute "includes statutory, common law and equitable claims." (Doc. # 10-1 at 3). All of Ms. Keith's claims are "unresolved disagreements" between Ms. Keith and Wells Fargo. The claims sounding under the Florida Consumer Collection Practices Act are statutory and the

privacy infringement allegations are based on the common law.  In light of the strong federal policy that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, these claims fall within the scope of the arbitration agreement.  <u>Seaboard Coast</u>, 690 F.2d at 1348 (11th Cir. 1982).

### 2. <u>Unconscionability</u>

When the Court finds that the parties agreed to arbitrate the claims, its next task is to determine "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985).  Federal courts sitting in diversity cases apply the substantive law of the state in which the case arose.  <u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1132 (11th Cir. 2010).

Under Florida law, Ms. Keith carries the burden of establishing that the arbitration clause is <u>both</u> procedurally and substantively unconscionable.  <u>Murphy v. Courtesy Ford, LLC</u>, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). Procedural unconscionability concerns the way an agreement was made and requires consideration of the relative bargaining power of the parties and their ability to understand the relevant terms.  <u>Orkin Exterminating Co., Inc. v. Petsch</u>, 872 So. 2d 259, 265 (Fla. 2d DCA 2004).  In determining whether procedural unconscionability exists, courts consider whether the complaining party had an opportunity to bargain,

whether the terms were presented on a "take-it-or leave-it" basis, and whether such party had a reasonable opportunity to understand the contract terms.  Murphy, 944 So. 2d at 1134.

Substantive unconscionability focuses on the agreement itself, and requires a showing that the terms of the agreement or provision are unreasonable and unfair.  Powertel v. Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999).  The terms at issue must be "so outrageously unfair" as to "shock the judicial conscience."  Bland ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 256 (Fla. 2d DCA 2006).

In asserting that the agreement is unconscionable, Ms. Keith principally relies on Powertel v. Bexley, 743 So. 2d 570, 571 (Fla. 1st DCA 1999).  In Powertel, a consumer signed an agreement to purchase a cell phone service plan which did not contain an arbitration clause.  Three and a half months later, the consumer sued Powertel.  Id. at 572.

The day after she filed her complaint, the consumer received her cell phone bill, which included a pamphlet describing Powertel's terms and conditions.  Id.  Although Powertel failed to indicate that the pamphlet contained any new terms, it included a new arbitration clause.  Id.  The consumer had no choice but to agree to the new provisions, including the new arbitration clause, if she wished to continue to use her already purchased cell phone service plan.  Id. at 575.

In finding unconscionability, the court relied heavily on the fact that the consumer had already made an investment in her agreement with Powertel.  Id.  Specifically, the consumer had already purchased the service plan, as well as equipment that only worked with the service plan.  Id.  Additionally, her telephone number could not be transferred to a new provider.  Id.  The court concluded that it was "reasonable to assume that some customers may suffer a great deal of inconvenience and expense to obtain and publish a new telephone number." Id.

In contrast, Ms. Keith does not allege that she made any special investment in her agreement with Wells Fargo. Additionally, Ms. Keith does not allege that she was deprived of the opportunity to read the agreement, including the arbitration clause, before she decided to use the credit card.  The arbitration clause at issue is located under a bold section heading located within the short four-page agreement.  (Doc. 10-1 at 3).  The clause's subparts are also headed, and the entire clause is only five paragraphs long. (Doc. 10-1 at 3).  It is printed in the same size font used throughout the agreement. (Doc. 10-1).

Under these circumstances, Ms. Keith has failed to establish that the arbitration clause is either procedurally or substantively unconscionable.  Murphy v. Courtesy Ford, LLC, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006).

**3. Public Policy**

Finally, Ms. Keith contends that the credit card agreement violates Florida's public policy. She invites the Court to decline to follow a Florida case which specifically held that "nothing in the text of section 559.77 [the FCCPA] evinces a legislative intent to preclude the submission of FCCPA claims to arbitration." Reeves v. Ace Cash Express, Inc., 937 So. 2d 1136, 1137 (Fla. 2d DCA 2006).

"'[F]ederal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise.'" Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009) (quoting King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 158 (1948)). Ms. Keith presents no evidence that the Florida Supreme Court would rule otherwise. Thus, the Reeves decision is binding on this Court.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Wells Fargo Financial America, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 10) is **GRANTED**. The parties shall proceed to arbitration as specified in the Arbitration Agreement.

(2) The case is **STAYED and ADMINISTRATIVELY CLOSED** pending the resolution of the arbitration proceedings.

(3) The parties shall immediately advise the Court when the

arbitration proceedings have concluded.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u> day of November 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: all counsel of record